**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

EXHIBIT A

|  |  |  |
|---|---|---|
| RANI ALLAN, | ) | |
| *Plaintiff*, | ) | |
| v. | ) | Civil Action No. 1:23-cv-867 |
| DANIEL GIGI, ET AL., | ) | |
| *Defendants*. | ) | |

## <u>ORDER</u>

On November 8, 2023, the Court held a hearing on Defendant Arlington County's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim, [Doc. No. 20] (the "County's Motion"), and on Defendants Robert Stanley and Carly Whisner's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim, [Doc. No. 25] (the "Officers' Motion"), and for the reasons stated from the bench, it is hereby

**ORDERED** that the County's Motion is **GRANTED** and Count II of the Amended Complaint be, and the same hereby is, **DISMISSED** as to the County pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim; and it is further

**ORDERED** that the Officers' Motion is **GRANTED** and Counts I, III, and IV of the Amended Complaint be, and the same hereby are, **DISMISSED** as to the Officers pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

The Clerk is directed to forward a copy of this Order to all counsel of record.

November 13, 2023
Alexandria, Virginia

Anthony J. Trenga
Senior U.S. District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

RANI ALLAN,                          )  Case 1:23-cv-867
                                     )
            Plaintiff,               )
                                     )
      v.                             )  Alexandria, Virginia
                                     )  November 8, 2023
DANIEL NATHAN GIGI, SHLOMO           )  11:02 a.m.
GIGI, ARLINGTON COUNTY,              )
CARLY WHISNER, and ROBERT            )
STANLEY,                             )
                                     )
            Defendants.              )
_____)  Pages 1 - 66


TRANSCRIPT OF MOTION TO DISMISS

BEFORE THE HONORABLE ANTHONY J. TRENGA

UNITED STATES DISTRICT COURT JUDGE

1    COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

1  <u>APPEARANCES</u>:

2  FOR THE PLAINTIFF:

3       JORDAN D. HOWLETTE, ESQUIRE
         J.D. HOWLETTE LAW, PLLC
4        1140 Third Street, N.E., Suite 2124
         Washington, D.C.  20002
5        (202) 921-6005

6  FOR DEFENDANTS CARLY WHISNER AND ROBERT STANLEY:

7       BLAIRE H. O'BRIEN, ESQUIRE
         HARMAN, CLAYTOR, CORRIGAN & WELLMAN, PC
8        Innsbrook Corporate Center
         4951 Lake Brook Drive, Suite 100
9        Glen Allen, Virginia  23060-9272
         (804) 662-1103

10
    FOR DEFENDANT ARLINGTON COUNTY:
11
         RYAN C. SAMUEL, ESQUIRE
12       WHITNEY DAVIS, ESQUIRE
         ARLINGTON COUNTY ATTORNEY'S OFFICE
13       2100 Clarendon Boulevard, Suite 403
         Arlington, Virginia  22201
14       (703) 228-3100

15  ALSO PRESENT:  RANI Allan

16

17

18

19

20

21

22

23

24

25

1   prove that an injury or accident could have been

2   avoided if an officer had had better or more training,

3   sufficient to equip him to avoid the particular

4   injury-causing conduct.  Such a claim could be made

5   about almost any encounter resulting in injury, yet not

6   condemn the adequacy of the program to enable officers

7   to respond properly to the usual and recurring

8   situations with which they must deal."

9           Plainly, the allegations here are

10  insufficient to establish a failure to train claim.

11  There's no allegations that will put the county on

12  notice of the specific training inadequacy that would

13  have caused an alleged Fourth Amendment or equal

14  protection violation.

15          And so the complaint should be dismissed with

16  prejudice as to the county.  I'm happy to answer any

17  questions you have.

18          THE COURT:  All right.  Thank you.

19          Let me rule on the motion to dismiss.

20          Let me also just say as a preliminary comment

21  that the Court understands completely why someone in

22  the plaintiff's position would think he was terribly

23  treated unfairly, but the claim has to be judged

24  against several principles of law and also understand

25  that someone might think those principles don't

1  adequately account for all considerations that should
2  be taken into account.  The Court is bound by the
3  established law in this area, and the Court is going to
4  apply those to this claim.
5        Here the plaintiff, Mr. Allan, has filed an
6  action consisting of joined federal and state law
7  claims against his former landlord; two Arlington
8  County police officers, Whisner and Stanley; and also,
9  the county relating to a conflict between Mr. Allan and
10 Daniel Gigi that resulted in an altercation and
11 subsequently led to Mr. Allan's arrest.
12       Based on his July 5, 2023, arrest, Mr. Allan
13 asserts claims against the responding officers, Whisner
14 and Stanley, for 1983 violations based on the Fourth
15 Amendment and equal protection grounds in Counts 1 and
16 3, a state law claim for false arrest in Count 4, and a
17 1983 *Monell* claim against the county in Count 2.
18       Let me just first address this issue of the
19 audio recording which the Court allowed to be filed.
20 The Court has not considered the substance of that, and
21 I don't think it technically falls within the exception
22 to the rule that the allegations in the complaint are
23 solely to be considered.
24       Again, in considering a motion to dismiss,
25 except where documents are explicitly incorporated or

attached to the complaint or integral to the complaint,
simply quoting from some portion of a document doesn't
give it independent, equal significance to the
plaintiff's claim.  So the Court will rule on the
motion to dismiss without reference to the audio
recording.

Let me first address Count 1 of the claim
pertaining to plaintiff's claim under 1983 based on the
violation of equal protection.

The equal protection clause in the Fourteenth
Amendment provides that no state shall deny to any
person within its jurisdiction the equal protection of
the laws.  The equal protection requirement keeps
governmental decision makers from treating differently
persons who are in all relevant respects alike.  As
such, to succeed on an equal protection claim under
Section 1983, the plaintiff must first demonstrate that
he's been treated differently from others with whom he
is similarly situated and that the unequal treatment
was the result of intentional or purposeful
discrimination.

For the purposes of showing intentional
discrimination, the defendants' knowledge of the
plaintiff's protected class is not enough.  The
plaintiff must plead factual allegations probative of

1 discriminatory animus.

2            Although it's not entirely clear from the
3 pleadings, it appears Mr. Allan is alleging disparate
4 treatment based on two bases:

5            First, based on the officers' decision to
6 credit Daniel Gigi's version of what happened during
7 the pepper spray incident instead of his own and to
8 only arrest Mr. Allan.

9            Secondly, based on the county's alleged
10 25 percent increase in the number of racially biased
11 policing complaints and arrest data.

12           The Court finds neither ground sufficient to
13 plausibly allege disparate treatment.

14           First, and most problematic for Mr. Allan,
15 there's no allegation in the amended complaint that the
16 officers were even aware of his ethnicity as being
17 Arabic-American.  He did not allege that his race or
18 ethnicity are visually apparent.  He also does not
19 allege that the officers made any comments about or
20 otherwise acknowledged his race or ethnicity, and the
21 warrants obtained by the officers as attached to the
22 amended complaint list his race as white.

23           Secondly, Mr. Allan and Daniel Gigi were not
24 sufficiently similarly situated for the purposes of
25 disparate treatment analysis just because they were

both involved in the incident. As the Fourth Circuit
has recognized, while similarly situated does not
require that the comparators be identical, for
selective enforcement claims, qualitative differences
in the nature and degree of the comparative offenses
matter.

Here, Mr. Allan alleges that Daniel Gigi
verbally threatened and threw a carpet at him and later
tackled him. By all accounts, if true, that conduct
would be sufficient for probable cause of an assault
and battery. However, Mr. Allan concedes that he
deployed pepper spray on Daniel Gigi. The courts in
this district have recognized that devices such as
pepper spray possess inherently dangerous
characteristics capable of causing serious and perhaps
irreparable injury. And the possession or use of a
dangerous weapon in connection with criminal conduct is
recognized as an important factor for evaluating the
severity of that criminal conduct.

So even taking Mr. Allan's allegations as
true, the Court, based on allegations in the complaint,
concludes that the nature of the parties' conduct was
not sufficiently similar for their comparative use in a
disparate treatment analysis but are, in fact,
materially, in fact, different.

1        Third, the statistics that Mr. Allan says

2  show that there's generally overrepresentation of

3  people of color being arrested in the county, paired

4  with statistics about racial bias complaints increasing

5  from 2015-2019, though certainly concerning and

6  noteworthy, do not advance his disparate treatment

7  claim.  These particular statistics do not logically

8  establish disparate treatment as between him and

9  Mr. Gigi.  Plus, they say nothing about causality in

10  this case, much less discriminatory intent.

11        Plaintiff does not allege any conduct on the

12  part of the officers that makes plausible the

13  conclusion that they arrested him because of racial

14  animus or stereotypes about Arab-Americans.  The

15  amended complaint does not allege that the officers

16  ever commented on his race or his appearance.  Instead,

17  the amended complaint conclusory alleges that a

18  statement made by Officer Whisner that he looked like

19  the primary aggressor was made solely based on his

20  race.

21        He alleges the comment was made after

22  speaking to Daniel Gigi for an extended period of time.

23  It is not plausible without more that the comment was

24  based solely on his appearance or solely on his race.

25  Courts in this district have repeatedly dismissed

1  claims involving similar speculative animus.

2         For all of these reasons, the Court concludes

3  that the amended complaint fails to state a claim that

4  make plausible this claim, and that count will be

5  dismissed.

6         Let me speak to Count 3 alleging 1983

7  violations based on the Fourth Amendment violation.

8         Probable cause sufficient to justify a

9  seizure or arrest requires that the facts and

10 circumstances within the officer's knowledge at the

11 time of the arrest were sufficient to warrant a prudent

12 person or one of reasonable caution in believing that

13 the suspect had committed an offense.  Evidence

14 sufficient to convict is not required, and an officer

15 need not exhaust every potential avenue of

16 investigation before seeking a warrant or making an

17 arrest.  With that said, an officer cannot simply

18 ignore exculpatory evidence presented by the suspect

19 that would defeat probable cause.

20        But critically, and as relevant here,

21 exculpatory evidence does not include claims of

22 self-defense, which does not negate probable cause

23 where other evidence supports a finding of probable

24 cause by the officer on the scene.

25        The various courts that have considered the

1  question have generally observed that because

2  self-defense is an affirmative offense to the

3  commission of a crime, which requires its own

4  evidentiary support, claims of self-defense do not

5  affect the existence of probable cause for the

6  commission of the underlying crime itself.

7       The arrest warrants for which Mr. Allan

8  concludes there was no probable cause were issued for

9  violations of Virginia Code 18.2-312, pertaining to

10 causing the release of a gas or chemical with noxious

11 or nauseating gases, and 18.2-57, pertaining to assault

12 and battery.

13      Mr. Allan concedes in the amended complaint

14 that he displayed and deployed pepper spray against

15 Daniel Gigi.  He also alleges that he was arrested

16 after the officers spoke to both of them.

17      The fact is that deploying pepper spray at

18 another person is a sufficient basis for both criminal

19 charges under Section 18.2-312 and also the other

20 statute he was charged with.

21      The officers were provided with information

22 about the altercation from both parties, and Daniel

23 Gigi gave sworn statements in support of the arrest

24 warrant.  There was clearly probable cause for the

25 officers to detain and arrest Mr. Allan in connection

1 with the pepper spray deployment irrespective of

2 whether ultimately the facts allowed various defenses

3 to that charge.

4      In that regard and on that point, for the

5 contention that the context in which the pepper spray

6 was deployed would have changed the officers' probable

7 cause determination is simply not supported by cases in

8 this area, settled law in this area. Claims of

9 self-defense are irrelevant to a determination of

10 probable cause. Any other rule would require law

11 enforcement officers to take on the role essentially of

12 the jury by weighing the credibility of the various

13 witnesses and strength of self-defense evidence at the

14 investigative stage. Such a requirement would create

15 significant problems in situations precisely like those

16 confronted.

17      The allegation that the officers did not give

18 equal credit to his statements or listen to the

19 recording or view his personal recording of the

20 incident simply does not create a factual issue about

21 the officers' conduct that cannot be resolved at this

22 stage in the proceedings and, therefore, should allow

23 this case to proceed. Because his own allegations

24 clearly establish facts sufficient to establish

25 probable cause, plaintiff fails to state a Fourth

1  Amendment claim for detention or arrest without

2  probable cause.

3          Similarly, the amended complaint fails to

4  allege sufficient facts in support of Mr. Allan's claim

5  that the officers used excessive force in detaining

6  him.  At most, the amended complaint alleges that his

7  handcuffs were too tight, which was painful and

8  resulted in bruising.  Where the complainant was

9  lawfully arrested, courts have repeatedly rejected

10 tight handcuffs as a basis for a claim of excessive

11 force absent allegations of a permanent or major

12 injury.

13         So for all of these reasons, the motion to

14 dismiss as to Count 2 based on that claim is dismissed

15 as well.

16         Let me also speak to the state law claim.

17         In Count 4, plaintiff makes a claim of false

18 arrest under Virginia state law against these officers.

19 For essentially the same reasons that the Court has

20 dismissed Count 1 pertaining to the 1983 claim based on

21 a Fourth Amendment violation, the amended complaint

22 fails to allege facts that make plausible his false

23 arrest claim under Virginia law.  That conclusion is

24 underscored by the existence of probable cause to

25 detain him initially without a warrant.  Even given the

1 underlying conduct for which he was being detained and

2 as set forth in the amended complaint, the officers

3 obtained from the magistrate a facially valid arrest

4 warrant after receiving statements under oath.

5       Count 4 is therefore dismissed, which leaves

6 the claim against the county for a *Monell* violation.

7       Under Section 1983, a local government can

8 only be held liable for unconstitutional acts that the

9 government itself actually caused through an official

10 government policy or custom.  The Fourth Circuit has

11 enumerated an exhaustive list of ways that a policy or

12 custom can give rise to liability for violations of

13 constitutional rights, including:

14       One, through an express policy, such as a

15 written ordinance or regulation;

16       Two, through the decision of a person with

17 final policymaking authority;

18       Three, through an omission, such as a failure

19 to properly train officers, that manifests deliberate

20 indifference to the rights of citizens; or

21       Four, through a practice that is so

22 persistent and widespread as to constitute a custom or

23 usage with the force of law.

24       The amended complaint does not allege an

25 express policy, a decision of a person with final

policymaking authority, or a practice so persistent and widespread as to constitute a custom. Rather, it only asserts that the county failed to properly train its officers in probable cause for arrest.

As the United States Supreme Court has recognized, a local government's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. Thus, to state a claim for a local government's failure to train its employees, the allegations must be sufficient to show deliberate indifference by the local government to the rights of persons with whom the untrained employees come into contact. Deliberate indifference requires proof that the local government was on actual or constructive notice of the issue and disregarded it anyway.

In that regard, the Supreme Court has repeatedly distinguished Section 1983 claims from the classic theory of *respondeat superior*, requiring plaintiffs to allege for the purposes of constructive notice a pattern of similar constitutional violations by untrained employees. A showing of simple or even heightened negligence will not suffice.

Here, the amended complaint does not assert a single incident that occurred in the county that is

1  similar in nature to the allegations in the amended
2  complaint, nor has it alleged any statistics that are
3  substantively relevant to its allegations about
4  training deficiencies with respect to determinations of
5  probable cause.  Rather, the amended complaint relies
6  on statistics from a different timeframe than the
7  incident at issue and equates community complaints
8  about racial bias in policing with investigated or
9  adjudicated cases that demonstrate actual deficiencies
10 in officers' probable cause findings.
11         Moreover, even if complaints about racial
12 bias were relevant to the probable cause training issue
13 alleged, the statistics relied upon do not provide the
14 Court with any way to determine the scale of the issue
15 as they do not include a total count of the complaints
16 about racial bias in county, nor the percentage of
17 complaints as a share of total arrests.
18         Instead, the figures merely reflect that the
19 complaints increased over time.  The directionality
20 tells the Court nothing about the purported
21 pervasiveness of the issues, let alone the reasons for
22 those issues.
23         For example, based on the 25 percent increase
24 in complaints between 2015 and 2019, it could have been
25 the case that in 2015, there were five complaints, and

1  in 2019, there were six.

2          There's simply insufficient evidence, based

3  on those statistics, to find any persuasive issue,

4  particularly as it relates to the situation as

5  addressed in the complaint.

6          It is true that plaintiff need not plead

7  specific deficiencies or aspects of a training program

8  in order to state a claim absent discovery because

9  plaintiffs are typically not in a position to do that.

10 The deliberate indifference standard does require that

11 a plaintiff plead the existence of similar incidents

12 resulting from a deficient training program or policy.

13 Here, no such allegations exist.

14          For all of these reasons, the plaintiff fails

15 to state facts that make plausible a claim against the

16 county, and Count 2 will be dismissed as well.

17          The Court will issue an order.

18          Is there anything further?

19          MR. SAMUEL:  Is it dismissed with prejudice,

20 Your Honor?

21          THE COURT:  Yes, it is.

22          MS. O'BRIEN:  Thank you, Your Honor.

23          MR. HOWLETTE:  Thank you.

24          THE COURT:  All right.  Thank you.

25          Counsel is excused.

1         The Court will stand in recess.

2       ------------------------------------
             Time:  12:28 p.m.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21     I certify that the foregoing is a true and

22 accurate transcription of my stenographic notes.

23

24

                              /s/
25                     Rhonda F. Montgomery, CCR, RPR